Hull, J,
This action comes into this court on petition in error to -reverse the judgment of the court of common pleas. It involves the question, whether an action can be maintained against a party for wrongfully suing out and procuring a writ of attachment, although the plaintiff did not sign the bond in attachment, but it was signed by the surety only; ■ and although the petition does not allege that the attachment was procured maliciously or without probable cause, but simply alleges that it was procured,or that it was grant,-ed wrongfully and improperly.
The plaintiff in error,. John H. Botefuhr, began an action -against the defendant in error, Leffingwell,and procured an *585 attachment upon one of the grounds named in the statute,it not being upon the ground of non-residence, but being upon one of the grounds where a bond was required. A bond was given- as required by the statute, but was signed by the surety only, and not by the principal. Upon a motion being made before the justice of the peace, where the action was commenced, to discharge the attachment, that motion was overruled, but upon appeal to the court of common pleas the attachment was discharged. Leffingwell then brought his action before a justice of the peace against Botefuhr for damages on account of procuring a wrongful and improper writ of attachment. The defendant claimed before the justice that the justice had no jurisdiction, for the reason that the action, to all intents and purposes, was an action for malicious prosecution, not being an action upon the bond; and that therefore, under section 591, Revised Satutes, the justice was without jurisdiction. The justice held' against the defendant,and rendered judgment in favor of the plaintiff. The case was appealed to the court of common pleas. There a demurrer was interposed to the petition upon the ground that the.court had no'jurisdiction,for the reason, as it was claimed, that the justice had no original jurisdiction in the action; it being still insisted that the action was and should be held to be, an action for malicious prosecution. It is further argued in behalf of the demurrer, which was a general demurrer, that the petition did not state facts sufficient to constitute a cause of action, for the reason that it did not allege that the defendant was a party to the bond in the attachment proceeding, and did not allege that the attachment was procured maliciously and without probable cause. The demurrer was overruled and the case after-wards heard and judgment rendered in favor of the plaintiff or $50.00 damages on account of the attachment. It is that judgment that it is sought to reverse in this court.
It is claimed, as I have said, by plaintiff in error, that the action, to all intents and purposes, is an action for malicious prosecution, and therefore the petition must allege that the writ of attachment was procured maliciously and without probable cause; that to maintain his action, the plaintiff must establish all the elements of a malicious prosecution. And it is urged that unless the principal, the *586 plaintiff, signs the bond in attachment, there can be no recovery upon the ground that the attachment was wrongfully and improperly sued out; that without this element of malice, there can be no recovery, unless the party signs the bond, and thereby becomes a party to it, and is bound by it.
The question has never been passed upon by the supreme court of this state. It was argued quite fully by counsel. The older decisions, and the older text books, seem rather to recognize and approve the position taken by plaintiff in error in this case: that to make a case,unless the party signs the attachment bond, he must show malice and want of probable cause.
The statute provides (section 6490) that: '
“When the ground of attachment is, that the defendant, is a foreign corporation, or a non resident of the county, the order of attachment may be issued without an undertaking, but in all other cases, the order of attachment shall not be issued by the justice until there has been executed in his office, by one or more sufficient sureties of the plaintiff, to be approved by the justice, an undertaking, in not less than double the amount of the plaintiff’s claim, to the effect that the plaintiff shall pay the defendant all damages which he may sustain by reason of the attachment, if the order be wrongfully obtained,”
So that it appears from the statute, that before the writ of attachment can issue, the plaintiff must file an undertaking in not less than double the amount of the plaintiff’s claim, to the effect that the plaintiff shall pay the defendant all damages which he may sustain by reason of the attachment, if the order prove to have been wrongfully obtained.
The writ of attachment is an extraordinary writ, and it affords an extraordinary remedy, to which the party is entitled if certain facts exist, but he is not entitled to such, a remedy unless those statutory grounds do exist. He must bring himself within and upon one of the grounds set forth in the statute, and state that ground in an affidavit, before the writ of attachment may issue, By Sling an affidavit and a bond he is entitled to levy upon the defendant’s property in advance of a judgment, to levy upon and take it before there has been an adjudication of his claim; an act *587 which may and often does, result in damage, and great damage, to a defendant whose property is thus taken, if it turns out that the attachment has been wrongfully or improperly obtained. The statute (section 6490) recognizes this element of possible or . probable damage which the plaintiff may do to the defendant, and requires that the plaintiff give an undertaking that he will pay all damages which the defendant may sustain by reason of the attachment, etc..
The nearest case in point in Ohio is a common pleas decision rendered by Judge Johnson, who was afterwards a judge of the supreme court of this state. It was rendered while he was upon the common pleas bench in Lawrence county, in 1857. The case is that of Zigler v. Russell, 3 W. L. M., 424. In the case before Judge Johnson the defendant was a non-resident, and no bond was required under the statute, and he there held, that there was no liability against the plaintiff for merely wrongfully or improperly procuring the attachment. The syllabus of the case is:
“In an action for wrongfully suing out an attachment before a justice, against a non-resident defendant, where no bond is required, it is not enough for the plaintiff to allege in his petition, as to this point, that the attachment was wrongfully sued out; but he must go further, and show that it was sued out maliciously, without probable cause, as in an action for malicious prosecution.’’
The learned judge, in discussing the question on page 428, refers to cases in other states. He says:
“The next two cases cited are Wilson v. Outlaw, Miner, 367, and Kirkby v. Jones, 7 Ala., 622, and are, it is true, actions on the case; but are different from that at bar, in this, that they were cases in which bonds were, by the attachment law of Alabama, required to be given, and rest, in the opinion of the court, solely on the ground that such bond was required to be given.
“Besides this, the condition of the Alabama bond )ris against ‘the wrongful or vexatious suing out’ of the writ. From this phraseology their courts have also drawn an argument to support their decision.
*588 “Our attachment law is different in this respect. In cases of non-residents, no bond is required; and’ hence, if we admit the proposition, that the giving of the bond under .section 193 of the code, creates a statutory liability beyond what would be the case without such a law, yet it does not follow that a similar action would lie for the wrongful suing out of the attachment where no such bond is required;
- “Those cases rest upon the ground that the condition of the bond, ‘to pay all damages by reason of the attachment if the order be wrongfully obtained,’ has been broken,when the grounds upon which the writ has been sued out are'held to be insufficient, even though the plaintiff may have acted in the utmost good faith, and from facts and circumstances •amounting, at common law, to probable cause. * * * *
“Had this been a case where a bond was required before ■obtaining the writ, the present plaintiff, on this construction, could have recovered damages actually sustained to •his property; but the fact that the legislature has required no bond where non-residents or foreign corporations are parties, furnishes conclusive evidence that no such remedy •as this, in that class of cases, was intended; but such parties were simpy left to their common law remedy by action on the case,
“It is true, it gives a decided advantage to the resident •defendant in attachment; but such is evidently the intent of the attachment law.”
So that the inference from the judge’s argument would ■seem to be, that in his opinion, where a bond was required to be given, there the plaintiff who causes the attachment to be issued, might be and would be liable1, although not ■on the bond; but in a case against a non-resident, where no bond is required, there, he says, the legislature evidently intended to discriminate in favor of the resident and against the non-resident defendant. And no bond being required, there could be no action, except the common law action.
The question has been decided by the courts of some of the other states. In Kirkry v. Jones, 7 Ala., 622, the supreme court of Alabama say. in the syllabus:
“Under the attachment law an action on the case may be •sustained either for wrongfully or vexatiously suing out an attachment; and the existence of malice is important only .in connection with the amount of damages,
*589 “ Where an attachment ia wrongfully sued out, the defendant, whose goods are attached, may recover the damages actually sustained by reason of the levy; and if the process is vexatious as well as wrongful, he may recover as in an action for a malicious prosecution.”
The supreme court of Texas, in Half, Weiss & Co. v. Curtis, 68 Tex., 640, passed upon this question, and say in the second paragraph of the syllabus:
‘‘The rule that.an action to recover actual damages for the wrongful suing out and levy-of an attachment must be based on the attachment bond, has not been recognized in Texas; the bond is the foundation of the liability of the sureties, but not of the principal. As against the principal a suit may be maintained against him for wrongfully suing out the attachment, either on his bond or on his liability, which, independent of the bond, resulted from his' wrongful act in resorting without just cause to the process of attachment. ”
The court say:
‘‘The province of the attachment bond is to give security to the defendant on which he may rely if the attachment may be wrongfully sued out, and as to the sureties is the foundation of their liability. Not so, however, as to the plaintiff who wrongfully avails himself of process which is too often used for purposes and in cases never contemplated by law. As against a plaintiff using such process, the basis of his liability is its abuse, or wrongful use, whereby a defendant is deprived’ of the use and possession of his property, or it may be of the property itself. Against such a person the action may be upon the bond, or upon' the liability which arises from his wrongful act.”
The question is discussed in the Am. & Eng. Ency. of Law, and the authorities cited Page 215, Vol. 3, 2d Ed.
‘‘In a few jurisdictions it is maintained that to give an attachment defendant a right of action for the wrongful suing out of an attachment, independently of statute and not under the attachment bond, proof of malice is necessary. But the more prevalent rule is that the attachment defendant has a right of action not based upon the bond, but sounding in tort for an attachment merely wrongful.”
It seems to us that the reasoning of these cases and au *590 thorities is sound, and that the better doctrine is, and the doctrine that is sustained by the weight of authority, that the attachment defendant has a right of action against the plaintiff who has been required to give bond that he will pay all damages, although the plaintiff does not sign the bond, and although the suing out of the writ was not malicious. It would be an anomalous legal proposition that the man who signs a bond as surety should be held, while the principal for whose security it was given would not be liable, for a wrongful attachment. It is clear that the bondsman is liable upon the bond that he has given, if it turn out that the attachment was wrongfully and improperly granted; but the construction that is sought by the plaintiff in error would relieve the principal of liability while the surety would be held. This, seems to us, contrary to the well established doctrine of principal and surety; that is to say, that tne surety may be liable and the principal not; the rule is, where the principal is not liable, the surety cannot be held.
B. F. Reno, for Plaintiff in Error.
Geo. B. Boone, for Defendant in Error.
The surety might compel the person injured to proceed against the principal, under the doctrine of principal and surety and under the statutes governing such actions,and if judgment was obtained against the surety who had signed an attachment bond, the plaintiff in the case not being a party to the bond, it seems clear that the surety who had thus had a judgment recovered against him, might proceed against his principal to compel him to- pay it, or recover from him an amount that he either had paid or had become liable to pay. What can be done indirectly can be done directly.
The judgment of the court of common pleas, therefore, is affirmed.
Note— B. F. Seno, for Plaintiff in Error: The action not being upon the attachment bond was necessarily an action for malicious prosecution. Being an action for malicious prosecution the J. P. had no jurisdiction. The original court having had no jurisdiction, an appellate court would have none on appeal. Citing: Brake on Attachment, 1st Ed., Pars. 150, 151, 754; Veitch v. Cebell, 105 Wis., 260; Bartholomew v. Mut. Life Ins. Co., 31 W. L. B., 22; sec. 591, R. S.
*591 Geo. B. Boone, for Defendant in Error: Whether the petition?contain#'a|cause;of action depends upon the liability of.jthe'FplaintifELin^error'for,! causing an attachment to issue wrongfully. Sec. 5523 R. S., provides for the bond in attachment cases,and that it shall be “to the effect that the plaintiff shall pay the defendant all damages which he may sustain by reason of the attachment if the order prove to have been wrongfully obtained.”
This statute recognizes the primary liability of the plaintiff to pay for the condition of the bond is to be that “the plaintiff shall pay”, and not that the sureties shall pay. Citing: 7 Ala. 622; 21 Ala. 491; 14 Kans.168; 52 Mo.App. 1; 68 Tex. 640; 2 Brev. (S. Car.) 158 (495).
The more prevalent rule is that the attachment defendant has a right of action not based upon the bond, but sounding in tort for an attachment merely wrongful. 3 Am. & Engl. Enc., 245.